ESTATE OF NATHALIE N. FOX, DECEASED, KENNETH FOX, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Fox v. Commissioner
Docket No. 7025-93
United States Tax Court
T.C. Memo 1995-30; 1995 Tax Ct. Memo LEXIS 31; 69 T.C.M. (CCH) 1719; January 24, 1995, Filed *31 Decision will be entered under Rule 155. For petitioner: Wallace Musoff and Michael J. Coyle. For respondent: James Biagi and Paula Zimmerman. WELLS
WELLS
MEMORANDUM FINDINGS OF FACT AND OPINION WELLS, Judge: Respondent determined a deficiency in petitioner's Federal estate tax in the amount of $ 230,230.97 and that petitioner is liable for the fraud penalty under section 6663 [1] in the amount of $ 172,673.23. Respondent alternatively asserted in the Answer that to the extent that petitioner is not found to be liable for the fraud penalty, petitioner is liable for the accuracy-related penalty under section 6662. [1]
The issues we are asked to decide are: (1) Whether certain municipal bearer bonds are includable in the gross estate of Nathalie N. Fox, deceased (decedent), for Federal estate tax purposes; *32 (2) whether accrued interest on such bonds is includable in decedent's gross estate; [2] *33 (3) whether funds totaling $ 41,329.30 in bank accounts jointly held by decedent and her children are includable in decedent's gross estate; (4) whether outstanding loan payments due to decedent from Dean Fox totaling $ 198,400 are includable in decedent's gross estate; (5) whether decedent made adjusted taxable gifts in the amount of $ 89,200; [3] (6) whether the value of municipal bearer bonds reported on petitioner's estate tax return was understated by $ 8,262.17; (7) whether petitioner is entitled to a deduction for administration expenses totaling $ 24,725; (8) whether petitioner is liable for the fraud penalty pursuant to section 6663; and (9) if petitioner is not liable for the fraud penalty, whether petitioner is liable for the accuracy-related penalty pursuant to section 6662(a). FINDINGS OF FACT Some of the facts and certain documents were stipulated for trial pursuant to Rule 91. The parties' stipulations are incorported into this Memorandum Opinion by reference and are found accordingly. Petitioner is decedent's estate. Decedent was a resident of Lawrence, New York, at the time of her death. The executor of decedent's estate is decedent's son, Kenneth Fox, who was a resident of New York, New York, at the time the petition was filed. Decedent's Estate and the Beneficiaries' Dispute
Decedent was married to Jules Fox, and they had three sons: Kenneth Ira Fox, Dean Leland Fox, and Roger Alan Fox. Dean Fox is married to Marjorie Fox, and they have two children, Lila Fox and Cory Fox. Roger Fox is married to Linda Waggy. Roger Fox has no children, but Linda Waggy has two children, Benjamin Waggy and Joshua Waggy, both *34 from a previous marriage. Decedent and Jules Fox owned a travel agency called Columbia Tours, Inc. (Columbia Tours), which they sold on December 15, 1976. Jules Fox died testate on January 10, 1985. Decedent was the executrix and sole beneficiary of her husband's estate. Jules Fox never filed any gift tax returns. No adjusted taxable gifts were reported on petitioner's estate tax return. During 1986 or thereabout, decedent was diagnosed with breast cancer. On or about February 25, 1989, as a result of a hip fracture, decedent was admitted to South Nassau Community Hospital. On March 20, 1989, decedent executed a power of attorney (the power of attorney) giving each of decedent's sons the authority to act as her attorney in fact. Decedent died on April 8, 1989, during her hospitalization. Decedent was 83 years old at the time of her death. Decedent was survived by her three sons. Prior to decedent's death, Kenneth Fox had spent a substantial amount of time with decedent during which decedent informed Kenneth Fox of the details of her financial affairs. Decedent also instructed Kenneth Fox as to her wishes regarding how she wanted to dispose of her estate. Pursuant to *35 decedent's Last Will and Testament dated September 13, 1984 (decedent's will), decedent's three sons were appointed as coexecutors. Under decedent's will, each of decedent's three sons was a beneficiary of one-third of decedent's residuary estate. Despite the appointment of decedent's three sons as coexecutors, decedent's sons agreed that Kenneth Fox should act as sole executor because he was more familiar with decedent's financial affairs than either Dean Fox or Roger Fox. On May 3, 1989, the Surrogate Court for Nassau County, New York (the Surrogate Court), granted Letters Testamentary for decedent's estate to Kenneth Fox. Based on advice from Joseph Gould, the attorney for the estate, Kenneth Fox hired Allen Greenwald, a certified public accountant, to prepare petitioner's estate tax return. Mr. Greenwald met with Kenneth Fox approximately six to seven times in order to prepare the estate tax return. Kenneth Fox provided Mr. Greenwald with the following: (1) A schedule of gifts made by decedent to various individuals for taxable years 1988 and 1989; (2) a typewritten list of estate assets; (3) statements from decedent's personal checking account; (4) an appraisal of the value *36 of a condominium owned by decedent; (5) statements from decedent's investment accounts; and (6) a list of bonds. Mr. Greenwald and Kenneth Fox discussed the Federal estate tax return line by line. Kenneth Fox informed Mr. Greenwald that decedent had not made any gifts in excess of the annual exclusion per beneficiary. Mr. Greenwald verified that all gifts had actually been made by verifying that funds had been taken out of decedent's personal checking account and transferred to accounts not belonging to decedent. Mr. Greenwald, however, did not see any of the checks used to make the transfers, and was never informed of the accounts to which money was transferred. During the course of Mr. Greenwald's dealings with Kenneth Fox regarding the preparation of the estate tax return, Kenneth Fox never informed Mr. Greenwald about any municipal bearer bonds other than those reported on the return. Kenneth Fox never told Mr. Greenwald that decedent had a safe deposit box or that she held other bank accounts with her sons. Kenneth Fox did not inform Mr. Greenwald that decedent had advanced money as a loan to Dean Fox. Mr. Greenwald was unaware of any notes handwritten by decedent dealing *37 with the disposition of her estate. On September 19, 1989, Kenneth Fox filed, on behalf of decedent's estate, Form 706, United States Estate Tax Return (the estate tax return). Mr. Greenwald signed the estate tax return as the preparer. The estate tax return reported that the value of decedent's gross estate was $ 769,012.87 and that the estate tax liability was zero. The estate tax return was accepted as filed at the Brookhaven Service Center, and on December 7, 1989, respondent issued a "closing letter". During November 1989, approximately 2 months after the estate tax return had been filed, Kenneth Fox mentioned to Mr. Greenwald that decedent owned assets in addition to those reported on the estate tax return. During January 1991, Kenneth Fox tried to retain Mr. Greenwald to do an accounting of the estate. As Mr. Greenwald knew that certain assets had not been reported, he refused to continue doing work for Kenneth Fox. He felt that it was inappropriate. Meanwhile, decedent's sons began to argue about the settlement of the estate. Specifically, Dean Fox and Roger Fox alleged that Kenneth Fox had concealed assets from them. The Surrogate Court for Nassau County, New York, *38 ultimately ordered Kenneth Fox to file an accounting for the estate. During April 1992, Kenneth Fox hired another accountant, Diego Milara, to prepare the judicial accounting. [4] On November 17, 1992, Kenneth Fox filed the judicial accounting prepared by Mr. Milara with the Surrogate Court. The accounting included the addition of loans made by decedent to Dean Fox. The accounting also reflected that the estate had borrowed money from Kenneth Fox, Dean Fox, and Roger Fox to facilitate the administration of the estate. Mr. Milara informed Kenneth Fox that he needed to amend the estate tax return to include the loans to Dean Fox. An amended Federal estate tax return was never filed because of a dispute over the amount of the loans. *39 Respondent's Reexamination of the Estate
During September 1992, respondent reopened the examination of the estate tax return and commenced an audit. The examination was conducted by Estate Tax Examiner Peter Morton. During a 6-hour meeting, Mr. Morton met with Kenneth Fox and Mr. Milara. During the course of the audit, Mr. Morton discovered a note handwritten by decedent and dated April 13, 1986, in which she discussed loans she made to Dean Fox, the existence of certain municipal bearer bonds, and how some of her miscellaneous possessions should be distributed. Kenneth Fox was in possession of decedent's handwritten note when he filed the estate tax return. The copy of decedent's handwritten note furnished to the Court was partially illegible. As we interpret the handwriting, the note reads as follows: Dean owed me $ 125,000 to which was added last week $ 29,000 which he needed in connection with the purchase of the house in Rye. [5] I have not made any further distributions to him of $ 10,000 annually since I felt he owed me interest on the previous loan of a total of $ 25,000. His debt of $ 154,000 is to be added to the amount of my Estate and taxes paid accordingly. *40 This amount will then be deducted from his third of the Estate. You will note I have a list of tax free bonds on a yellow pad which I did not report in settling dad's estate so these need not be included, but divided as fairly as possible. Whatever else of my possessions which remain, please divide peacefully - my jewelry and Dad's watch are worth only $ 6-7,000 - try to be brotherly in choosing what each of you would like to have. I would like Lila and Cory to each have a piece. Perhaps Lila could also have my diamond wedding band which is in the vault. The friendliness which you three have displayed has given me much joy. Please don't let a few thousand dollars break this up. Your attentiveness to me has been my greatest pleasure since I lost Dad. I cannot thank you enough.
Mr. Morton also examined all bank accounts, money market accounts, and certificates of deposit held by decedent. Decedent maintained a personal *41 checking account (the personal checking account) No. XXX-X-XX7344 at Chase Manhattan Bank. For her convenience, decedent had added Kenneth Fox's name to the account. Mr. Morton discovered that decedent had opened several new accounts within the year before her death. On April 4, 1988, decedent opened a 1-year certificate of deposit, account No. XXXXXX0933, at Passumpsic Savings Bank (the Passumpsic Account). On April 4, 1989, the maturity date of the Passumpsic Account, the balance was $ 54,155.05. During May 1988, decedent opened a Dreyfus U.S. Guaranteed Money Market Account No. XX-XXXXXX6555 (the Dreyfus Account) with a deposit of $ 50,000 which she made from her personal checking account. On December 29, 1988, decedent set up several joint bank accounts with her sons (the joint accounts) at Chase Manhattan Bank. The three joint accounts were as follows: (1) Chase Manhattan Bank Account No. XXX-XX2129 in the names of decedent and Dean Fox (the Dean Fox Joint Account); (2) Chase Manhattan Bank Account No. XXX-XX2137 in the names of decedent and Roger A. Fox (the Roger Fox Joint Account); and (3) Chase Manhattan Bank Account No. XXX-XX2145 in the names of decedent and Kenneth *42 I. Fox (the Kenneth Fox Joint Account). Dean Fox was unaware of the existence of the Dean Fox Joint Account until the proceedings in the Surrogate Court. Meanwhile, during December 1988, Kenneth Fox set up several custodial bank accounts at Chase Manhattan for decedent's grandchildren (the custodial accounts). [6] Kenneth Fox designated himself as custodian. The accounts were as follows: (1) Chase Manhattan Bank Account No. XXX-XX2038 in the name of Kenneth Fox as custodian for Joshua Waggy (the Joshua Waggy Custodial Account); (2) Chase Manhattan Bank Account No. XXX-XX2012 in the name of Kenneth Fox as custodian for Lila Fox (the Lila Fox Custodial Account); (3) Chase Manhattan Bank Account No. XXX-XX2046 in the name of Kenneth Fox as custodian for Benjamin Waggy (the Benjamin Waggy Custodial Account); and (4) Chase Manhattan Bank Account No. XXX-XX2020 in the name of Kenneth Fox as custodian for Cory Fox (the Cory Fox Custodial Account). *43 Kenneth Fox also maintained two Vanguard Money Market Accounts (the Vanguard Accounts). Vanguard Account No. XXXXXX924-3 was opened in the names of Kenneth Fox and Roger Fox (the Kenneth Fox/Roger Fox Vanguard Account), and Vanguard Account No. XXXXXX925-6 was opened in the names of Kenneth Fox and Dean Fox (the Kenneth Fox/Dean Fox Vanguard Account). Dean Fox was unaware of the existence of the Kenneth Fox/Dean Fox Vanguard Account. Transfers among the various accounts are discussed infra. Unreported Bearer Bonds
During 1979 through 1984, decedent and Jules Fox purchased the following municipal bearer bonds (the unreported bearer bonds): (1) 20 units of Nassau County, New York, 6.60-percent bonds due May 1, 2003, face amount of $ 20,000; (2) 20 units of New York Transportation Capital Facilities, 6.40-percent bonds due February 15, 2004, face amount of $ 20,000; (3) 15 units of Nassau County, New York, Serial General Improvement 5.50-percent bonds due April 1, 2002, face amount of $ 15,000; (4) 90 units of Nassau County, New York, 8.10-percent bonds due July 15, 2002, face amount of $ 90,000; (5) 50 units of New York State Environ. 8.20-percent bonds *44 due March 15, 1998, face amount of $ 50,000; (6) 25 units of Niagara Falls, New York, 10.00-percent bonds due March 15, 1994, face amount of $ 25,000; (7) 25 units of Orange County, New York, 11.50-percent bonds due May 15, 2000, face amount of $ 25,000.
The unreported bearer bonds were kept in safe deposit box No. 544 (the safe deposit box) located at Manufacturer's Hanover Bank in Hewlett, New York. The safe deposit box was registered in the name of Columbia Tours. Prior to Jules Fox's death, he had access to the safe deposit box. Jules Fox informed all of his sons of the existence of the safe deposit box so that they would be aware of it in the event of his death. Dean Fox visited the safe deposit box once during 1982 when he was about to move from New York. Jules Fox wanted Dean Fox to know where the safe deposit box was and that the key could be found at Jules Fox and decedent's residence. Decedent also had signatory authority for and access to the safe deposit box. At the time of decedent's death, the unreported bearer bonds were located in the safe deposit box. The value of the unreported bonds was not reported as part of Jules Fox's gross estate for Federal *45 estate tax purposes or as part of decedent's estate. Kenneth Fox currently has possession of all of the unreported bearer bonds which have not been called by the issuers. See infra for discussion of called bonds. Kenneth Fox controls the distribution of the interest payable on the unreported bearer bonds. Interest on the Unreported Bearer Bonds
The unreported bearer bonds were coupon bonds. Before his death, Jules Fox was responsible for clipping the coupons and collecting interest on the bonds. After Jules Fox's death, but before decedent became seriously ill, decedent clipped the interest coupons, collected the interest, and deposited the interest into her own checking account. At no time did either Dean Fox or Roger Fox receive interest payable on the unreported bearer bonds. Loans to Dean Fox
As of April 13, 1986, as documented by decedent's handwritten note, Dean Fox borrowed $ 154,000 from decedent. On or about April 13, 1986, by initialling decedent's handwritten note, Dean Fox acknowledged that he had borrowed $ 154,000 from decedent. Subsequent to April 13, 1986, decedent made additional loans to Dean Fox totaling $ 44,400. During decedent's lifetime, *46 Dean Fox made no payments on the loans. Although decedent directed in her handwritten note that the loans be included in her estate, Kenneth Fox, as executor, did not report the loans on the estate tax return. The judicial accounting completed by Mr. Milara included the $ 198,400 of loans as an estate asset. [7] The judicial accounting also included an additional $ 52,267.27 which represented interest accrued on the loans as of decedent's date of death. Transfers Made Prior to Decedent's death
On April 1, 1988, decedent gave $ 13,200 to Kenneth Fox. On December 10, 1988, decedent transferred $ 10,000 to Kenneth Fox by check No. 101 drawn on the Dreyfus Account. *47 Kenneth Fox deposited check No. 101 into Citibank Insured Market Rate Account No. XXXX2707 in the name of Kenneth Fox. On December 20, 1988, decedent issued the following checks drawn on the Dreyfus Account, each in the amount of $ 10,000 to the following payees: No. 102 to Lila Fox; No. 103 to Cory Fox; No. 104 to Joshua Waggy; and No. 105 to Benjamin Waggy. Kenneth Fox deposited checks Nos. 102, 103, 104 and 105 into the respective custodial accounts of each payee with Kenneth Fox named as custodian. On December 29, 1988, Kenneth Fox withdrew $ 9,000 from the Lila Fox Custodial Account and $ 9,000 from the Cory Fox Custodial Account and deposited such amounts to the Dean Fox Joint Account. On the same date, Kenneth Fox withdrew $ 9,000 from the Joshua Waggy Custodial Account and $ 9,000 from the Benjamin Waggy Custodial Account and deposited such amounts to the Roger Fox Joint Account. On March 28, 1989, Kenneth Fox withdrew $ 17,000 from the Dean Fox Joint Account and deposited such amount to the Kenneth Fox/Dean Fox Vanguard Account. On the same date, Kenneth Fox withdrew $ 17,000 from the Roger Fox Joint Account and deposited such amount to the Kenneth Fox/Roger Fox Vanguard *48 Account. On March 29, 1989, Kenneth Fox withdrew the balance of $ 12,212.56 in the Dreyfus Account and deposited such amount to decedent's personal checking account. On March 30, 1989, Kenneth Fox issued a check to himself in the amount of $ 16,000 drawn on decedent's personal checking account. The check was payable to the order of "UMMR Prime Portfolio". On April 5, 1989, 3 days before decedent's death, Kenneth Fox transferred by wire $ 54,155.05 from the Passumpsic Account to the Kenneth Fox Joint Account. By wiring the funds, Kenneth Fox had immediate access to the money. Consequently, on the same date, Kenneth Fox made the following withdrawals totaling $ 44,145.05 from the Kenneth Fox Joint Account and deposited such amounts to the following accounts: (1) $ 10,000 to the Lila Fox Custodial Account; (2) $ 10,000 to the Joshua Waggy Custodial Account; (3) $ 10,000 to the Roger Fox Joint Account; (4) $ 10,000 to the Dean Fox Joint Account; and (5) $ 4,415 to the Benjamin Waggy Custodial Account Kenneth Fox withdrew $ 10,000 from the Passumpsic Account and deposited such amount in the Kenneth Fox Joint Account. On April 7, 1989, 1 day before decedent's death, Kenneth *49 Fox withdrew $ 11,000 from the Dean Fox Joint Account and deposited it to the Kenneth Fox/Dean Fox Vanguard Account. Chase Manhattan Bank did not post the withdrawal from the Dean Fox Joint Account until April 11, 1989. On the same date, April 11, 1989, Kenneth Fox withdrew $ 10,000 from the Lila Fox Custodial Account and deposited such amount to the Kenneth Fox/Dean Fox Vanguard Account. Chase Manhattan Bank did not post the withdrawal from the Lila Fox Custodial Account until April 11, 1989. Additionally, on April 7, 1989, Kenneth Fox withdrew $ 11,000 from the Roger Fox Joint Account and deposited such amount to the Kenneth Fox/Roger Fox Vanguard Account. Chase Manhattan Bank did not post the withdrawal from the Roger Fox Joint Account until April 11, 1989. On April 7, 1989, Kenneth Fox also withdrew $ 10,000 from the Joshua Waggy Custodial Account and deposited such amount to the Kenneth Fox/Roger Fox Vanguard Account. Chase Manhattan Bank did not post the withdrawal from the Joshua Waggy Custodial Account until April 11, 1989. On April 7, 1989, Kenneth Fox deposited check No. 342 in the amount of $ 5,855 to the Benjamin Waggy Custodial Account. On April 7, 1989, Kenneth *50 Fox also withdrew $ 10,000 from the Benjamin Waggy Custodial Account and deposited such amount to the Kenneth Fox/Roger Fox Vanguard Account. Chase Manhattan Bank did not post the withdrawal from the Benjamin Waggy Custodial Account until April 11, 1989. The above-referenced bank transactions that occurred on or after March 23, 1989, were made by Kenneth Fox under his power of attorney from decedent. Dean Fox had no knowledge of funds being transferred into and out of accounts bearing his name. As of decedent's death, the balance of the Dean Fox Joint Account was $ 12,527.16 As of decedent's date of death, the balance of the Kenneth Fox Joint Account was $ 16,275.30. As of decedent's date of death, the balance of the Roger Fox Joint Account was $ 12,527.16. On December 10, 1989, Kenneth Fox provided Roger Fox with $ 38,000 from the Kenneth Fox/Dean Fox Vanguard Account. Dean Fox was not aware of such transaction. Transfers After Decedent's Death
The 90 Units of Nassau County Bonds
The 90 units of Nassau County, New York, 8.10-percent bonds due July 15, 2002, face amount of $ 90,000, were called April 12, 1991. Kenneth Fox deposited the call proceeds in the amount *51 of $ 92,700 from such bonds as follows: (1) $ 25,750 to the Joshua Waggy Account under the Uniform Gift to Minors Act (UGMA); (2) $ 25,750 to the Benjamin Waggy Custodial Account under UGMA; (3) $ 20,600 to the Lila Fox Custodial Account under UGMA; and (4) $ 20,600 to the Cory Fox Custodial Account under UGMA. The 25 Units of Orange County Bonds
The 25 units of Orange County, New York, 11.50-percent bonds due May 15, 2000, face amount of $ 25,000, were called May 15, 1990. Kenneth Fox deposited all of the call proceeds from such bonds to the Kenneth Fox/Dean Fox Vanguard Account. Respondent's Determinations
As a result of Mr. Morton's audit of petitioner's Federal estate tax return, respondent increased decedent's taxable estate by a total of $ 619,569.18. Respondent's first adjustment was to increase the taxable estate by $ 265,269.88 representing bonds owned by decedent. A summary of determinations made by respondent with respect to such bonds is contained in the appendix attached to this Memorandum Opinion. Respondent also determined that decedent possessed a claim in the amount of $ 198,400 against her son Dean Fox for loans made to him between January 1, 1982, *52 and decedent's death and therefore increased decedent's taxable estate by $ 198,400. Additionally, respondent determined that the joint accounts were includable in decedent's estate and therefore increased decedent's taxable estate by $ 41,329.30. Respondent disallowed petitioner's claimed deductions for executor's commissions and attorney's fees totaling $ 24,725 for lack of substantiation. Respondent also determined that decedent made adjusted taxable gifts of $ 89,845 [8] and therefore increased decedent's taxable estate by $ 89,845. Respondent also determined that petitioner is liable for the fraud penalty under section 6663. *53 OPINION Unreported Bearer Bonds
Respondent contends that the unreported bearer bonds, which had a date of death fair market value of $ 248,561.49, are includable in decedent's gross estate. Petitioner contends that the unreported bearer bonds are not includable in decedent's gross estate because decedent did not own the bonds at the time of her death. Specifically, petitioner contends that Jules Fox and decedent gave the bonds to their sons as gifts at various times between 1979 and 1984. Section 2031(a) provides that the value of the gross estate of a decedent includes "the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated." Section 2033 further provides that the value of the gross estate includes "the value of all property to the extent of the interest therein of the decedent at the time of his death". Respondent's determinations are presumed to be correct, and petitioner bears the burden of proving that decedent did not own the unreported bearer bonds at the time of her death. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Section 2501 imposes a tax on the "transfer *54 of property by gift". Section 2511(a) provides that the gift tax applies "whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible, or intangible". A transfer of property is only considered to be complete for Federal gift tax purposes only to the extent that "the donor has so parted with dominion and control as to leave him no power to change its disposition, whether for his own benefit or for the benefit of another". Sec. 25.2511-2(b), Gift Tax Regs. Consequently, a gift is not complete if the donor retains a substantial legal right or economic benefit in the transferred property. Smith v. Shaughnessy, 318 U.S. 176 (1943); Estate of Sanford v. Commissioner, 308 U.S. 39, 43 (1939); Burnet v. Guggenheim, 288 U.S. 280 (1933); Autin v. Commissioner, 102 T.C. 760, 770-771 (1994). To evaluate whether a gift is complete, we look to "the objective facts of the transfer and the circumstances under which it [the gift] is made". Sec. 25.2511-1(g)(1), Gift Tax Regs. Petitioner relies *55 on certain testimony to establish that the unreported bearer bonds were transferred to decedent's sons at various times prior to decedent's death. Specifically, petitioner relies upon Kenneth Fox's testimony that Jules Fox and decedent advised Kenneth Fox that they were giving the unreported bearer bonds to the three sons. Petitioner also relies on Patricia Goldin's testimony that she had conversations with decedent, who told her that decedent and Jules Fox had given bearer bonds to their sons. Petitioner also contends that Jules Fox and decedent failed to exercise dominion and control over the bonds. Finally, to show that Dean Fox had access to the bonds, petitioner relies upon Dean Fox's testimony that he became aware of the existence of the bearer bonds during April 1986 and that he once visited the safe deposit box. [9]
*56 Respondent contends that the evidence advanced by petitioner does not establish that decedent and Jules Fox made gifts of the bonds to their children. We agree with respondent. As to Kenneth Fox's testimony, at trial we observed that he was a hostile and evasive witness. Additionally, petitioner failed to offer any documentary evidence to support Kenneth Fox's testimony. The law is well settled that we need not accept uncorroborated testimony at face value if it is questionable, improbable, or unreasonable. Quock Ting v. United States, 140 U.S.417, 420-421 (1891); Fleischer v. Commissioner, 403 F.2d 403,406 (2d. Cir. 1968). Under the circumstances of the instant case, we find Kenneth Fox's testimony to be highly questionable. As to Ms. Goldin's testimony, offered by petitioner to corroborate the purported gift of the bonds by decedent and Jules Fox to their sons, we do not find that Ms. Goldin's statements corroborate or otherwise support Kenneth Fox's testimony. Ms. Goldin testified that decedent told her that decedent and Jules Fox had set aside some bonds for their children. Ms. Goldin further testified that decedent "had set * * * [the *57 bonds] aside because she wanted her children to be well taken care of and she wanted them to always be friends." Ms. Goldin, however, had no personal knowledge as to whether the children had control over the bonds, whether the children ever had possession of the bonds, whether the children ever received interest from the bonds, or whether the bonds in question were the bonds to which decedent was referring. We find that Ms. Goldin's vague testimony falls far short of establishing that the bonds had been given to decedent's sons prior to decedent's death. In our view, Ms. Goldin's testimony merely corroborates decedent's general intent to provide for her children after her death. As to petitioner's contention that Jules Fox and decedent did not exercise dominion and control over the bonds, we reject such notion. To the contrary, the record reflects that Jules Fox and decedent did, in fact, exercise dominion and control over the bonds. Jules Fox and decedent stored the bonds in their personal safe deposit box. Jules Fox apparently handled the collection of interest prior to his death. After Jules Fox's death, decedent clipped the interest coupons, collected the interest, and *58 deposited the interest into her personal checking account. As we view decedent's actions, they are inconsistent with petitioner's contention that decedent did not exercise dominion and control over the bonds prior to her death. As to petitioner's contention that Dean Fox knew that the bonds existed as early as April 1986, we do not agree that his testimony corroborates Kenneth Fox's testimony that the bonds belonged to the sons prior to decedent's death. Dean Fox merely testified that, because his mother mentioned certain bearer bonds in the handwritten note, he knew that the bonds "existed". We therefore reject petitioner's contention that the fact that Dean Fox initialed decedent's handwritten note indicated that the bonds had been transferred to the sons. We also reject petitioner's contention that Dean Fox's single visit to the safe deposit box with Jules Fox establishes that all of the sons had access to the bonds. The visit to the safe deposit box merely establishes that Jules Fox wanted Dean Fox to be aware of the existence of the safe deposit box. It does not in any way establish that Jules Fox gave his sons possession and control of the contents of the safe deposit *59 box. Finally, we note that petitioner failed to call Roger Fox to corroborate Kenneth Fox's testimony that the bonds were given to all three of decedent's sons prior to her death. "The rule is well established that the failure of a party to introduce evidence within his possession, and which if true, would be favorable to him, gives rise to the presumption that if produced it would be unfavorable." Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). In the instant case, given that Roger Fox and Dean Fox raised allegations in Surrogate Court that Kenneth Fox had concealed assets from them, it seems likely that the testimony of Roger Fox would be unfavorable to petitioner's case. Based on the record in the instant case, we hold that the bonds were owned by decedent at her death, and we sustain respondent's determination that the value of the unreported bearer bonds is includable in decedent's gross estate. Accrued Interest on the Unreported Bearer Bonds
Respondent contends that interest accrued on the unreported bonds in the amount of $ 4,024.57 as of the date *60 of decedent's death is includable in decedent's gross estate. Petitioner does not directly address the issue of its failure to include the $ 4,024.57 on the estate tax return. [10] Petitioner merely asserts that Kenneth Fox followed Mr. Greenwald's advice in not reporting the interest. Interest accrued on bonds owned by a decedent as of the date of the decedent's death constitute part of the gross estate. Sec. 2033; sec. 20.2033-1(b), Estate Tax Regs. Respondent's determinations are presumed correct, and petitioner bears the burden of proof. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Petitioner has failed to make any arguments or offer any evidence with respect to the issue of whether the accrued interest on the unreported bonds should be included in decedent's gross estate. Although reliance on a tax consultant's advice in some *61 instances may relieve a taxpayer from penalties, absent proof that the deficiency is incorrect, such reliance cannot relieve the taxpayer from a deficiency determination. Based on our holding that the unreported bearer bonds are includable in decedent's gross estate, we sustain respondent's determination with respect to the accrued interest on the unreported bearer bonds. Funds in the Joint Bank Accounts
Respondent contends that petitioner failed to report $ 41,329.30 held in the joint bank accounts on the date of decedent's death. Respondent contends that the balance in each of the joint accounts as of the date of decedent's death is directly traceable to decedent's Dreyfuss and Passumpsic Accounts. On the other hand, petitioner contends that decedent was merely a nominal joint tenant on each of the joint accounts, and the balance in each account did not belong to decedent. Section 2040(a) provides that the gross estate includes the value of all property held at the time of a decedent's death by the decedent and another person as joint tenants with the right of survivorship. The entire value of jointly held property is included in the deceased joint tenant's gross estate, *62 except such part of the entire value that is attributable to the amount of consideration in money or money's worth furnished by the other joint tenant. Sec. 20.2040-1(a), Estate Tax Regs. Consequently, the entire amount on deposit in a joint bank account must be included in a decedent's gross estate unless it can be demonstrated that all or some part of the funds originally belonged to the other joint tenant. Wilson v. Commissioner, 56 T.C. 579, 586 (1971); sec. 20.2040-1(b), Estate Tax Regs. Respondent's determinations in the notice of deficiency are presumed to be correct, and petitioner has the burden of proof. Rule 142(a); Welch v. Helvering, supra.
Petitioner contends that decedent was not entitled to the balances in the joint accounts because the accounts were funded by the interest on the unreported bearer bonds. Petitioner's argument appears to concede that such a contention has no merit if the unreported bearer bonds are found to be includable in decedent's estate. Consequently, as we have held above that the unreported bearer bonds were includable in decedent's estate, we sustain respondent's determination *63 that the property held in the joint accounts is includable in decedent's gross estate. Unreported Loans to Dean Fox
Respondent contends that petitioner failed to report loans totaling $ 198,400 due to decedent from Dean Fox at the time of her death. On brief, petitioner concedes that the outstanding loans should have been included as assets of the estate. Accordingly, respondent's determination with respect to the inclusion of the loans in the amount of $ 198,400 is sustained. Adjusted Taxable Gifts
Respondent contends that petitioner failed to report adjusted taxable gifts totaling $ 89,200 made by decedent during 1988 and 1989. Petitioner contends that because the value of each gift did not exceed the $ 10,000 annual exclusion amount, the gifts were not taxable, and were therefore not reportable. Section 2001(b) provides that the amount of tax due on an estate shall be equal to the excess of a tentative tax computed on the amount of the taxable estate and the amount of adjusted taxable gifts over the aggregate tax on all gifts made after December 31, 1976, as if the provisions in effect at decedent's death had been applicable at the time of the gifts. Adjusted *64 taxable gifts are determined by reference to the definition of taxable gifts made during the taxable period less exclusions and certain deductions. Sec. 2001(b); Estate of Smith v. Commissioner, 94 T.C. 872, 874 (1990). Section 2503(b) provides that, in the case of gifts made to any person by the donor during the calendar year, the first $ 10,000 of such gifts to such person shall not be included in the total amount of gifts made during such year. Our review of the record indicates that decedent's gifts to Lila Fox, Cory Fox, Joshua Waggy, and Benjamin Waggy during 1988 and to Lila Fox, Joshua Waggy, and Benjamin Waggy during 1989 were each for $ 10,000 or less, and fall within the annual exclusion. Decedent, however, gave $ 23,200 to Kenneth Fox during 1988 and $ 16,000 to an investment account for Kenneth Fox during 1989. Accordingly, we hold that petitioner's adjusted taxable gifts are to be increased by $ 13,200 for 1988 and $ 6,000 for 1989. Respondent argues that the gifts to all of the grandchildren were shams because the funds did not remain in the custodial accounts, but were transferred through other accounts and ultimately deposited *65 in accounts bearing Kenneth Fox's name. Although we recognize that there are instances in which it may be appropriate to recharacterize gifts based on their substance, see Heyen v. United States, 945 F.2d 359 (10th Cir. 1991) (decedent's transfers of blocks of stock each worth less than $ 10,000 were subject to gift tax where purported donees retransferred the stock to decedent's family members), we decline to do so in the instant case. The record reflects that Kenneth Fox transferred funds from the custodial accounts soon after the gifts were made. On one hand, if decedent intended to make gifts to her grandchildren, we need not be concerned with transactions occurring after the completion of decedent's gifts because the subsequent transfers would be gifts in their own right. On the other hand, if decedent intended to make gifts to Kenneth Fox through multiple transfers or if decedent had been manipulated by Kenneth Fox to make transfers to him through the children, the sham transaction doctrine might have some applicability to the instant case. The record, however, does not indicate that decedent was involved with the subsequent transfers in any *66 way or that decedent intended to avoid the gift tax. To the contrary, the record shows that decedent regularly made gifts of less than $ 10,000 to family members and intended to make annual gifts to her grandchildren. Additionally, decedent clearly desired that all of her sons share equally in her estate as evidenced by her will and her handwritten note. Consequently, we find it improbable that decedent intended to make substantial gifts to Kenneth Fox, as opposed to making gifts to her other family members. Based on the record in the instant case, we hold that decedent's adjusted taxable gifts should be increased by $ 19,200 and not by $ 89,200, as asserted by respondent. Value of Reported Bearer Bonds
Respondent contends that petitioner understated by $ 8,262.17 the value of the municipal bearer bonds that were reported on the estate tax return. Petitioner contends that its method of valuing the bonds was fair and accurate. The value of property includable in a decedent's gross estate under sections 2031 through 2044 is its fair market value at the time of decedent's death. [11] Sec. 20.2031-2, Estate Tax Regs. Respondent's determinations are presumed to be correct, *67 and petitioner has the burden of proving that the date of death values as determined by respondent are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Petitioner contends that the methodology used to calculate the fair market value of the bonds on decedent's date of death was reasonable and was a good faith attempt to comply with the law. Kenneth Fox testified that he derived the fair market value of the bonds by soliciting bid quotations from three brokerage firms, Prudential Bache, Merrill Lynch, and Kidder Peabody. Kenneth Fox further testified that he applied a reasonable discount factor based on his own prior experiences. Beyond such testimony, however, petitioner offered no evidence of any specific methodology supporting petitioner's value placed on the bonds. That Kenneth *68 Fox may have made a good faith attempt to comply with the regulations is no substitute for the requirement that petitioner must satisfy its burden of proof in the instant case. Respondent's determination is presumed correct, and petitioner has not offered sufficient evidence to overcome that presumption. Accordingly, we sustain respondent's determination with respect to the valuation of the reported bonds. Administration Expenses
Petitioner contends that it partially paid and estimated the remainder of its reasonably anticipated attorney's fees and executor's commissions which it claimed as deductible administration expenses on its estate tax return. Respondent disallowed the deduction in full for lack of substantiation. Under section 2053, the administration expenses, including attorney's fees and executor's commissions, of an estate are deductible if: (1) The expenses are actually and necessarily incurred in the administration of the decedent's estate and (2) the expenses are reasonable and allowable under the laws of the State in which the estate is being administered. Additionally, expenses that are incurred for the individual benefit of heirs, legatees, or devisees *69 are not essential to the proper settlement of the estate, and therefore may not be taken as deductions. Sec. 20.2053-3(a), Estate Tax Regs. Respondent's determinations are presumed to be correct, and petitioner has the burden of proof. Rule 142(a); Welch v. Helvering, supra.
At trial, Kenneth Fox offered certain checks drawn on an account held in petitioner's name to show that disbursements were made to attorneys and to himself as executor. Petitioner, however, failed to introduce any evidence to establish that the payments evidenced by the checks were for the purpose of administering decedent's estate. Consequently, petitioner has failed to prove that the expenses were incurred to administer the estate and that they were not for the individual benefit of one or more of the beneficiaries. Accordingly, we sustain respondent's disallowance of the deduction for administration expenses. Fraud Penalty
Respondent also determined that petitioner is liable for the fraud penalty pursuant to section 6663(a). Respondent contends that Kenneth Fox engaged in a course of conduct calculated to conceal the existence of substantial estate assets and *70 to mislead respondent as to whether the assets were includable in the estate. Petitioner, on the other hand, contends that respondent's allegations of fraud are ill conceived because any underpayments resulted from petitioner's reliance on its accountant, Mr. Greenwald. Section 6663(a) provides that if any part of any underpayment [12] of tax required to be shown on a return is due to fraud, a penalty is imposed in the amount of 75 percent of the portion of the amount attributable to fraud. Under section 6663(b), if the Secretary proves that any portion of an underpayment is attributable to fraud, the entire underpayment is attributable to fraud, except as to any portion of the underpayment which the taxpayer establishes (by a preponderance of the evidence) is not attributable to fraud. Section 6664(c) provides that the fraud penalty will not be imposed with respect to any portion of an underpayment if it is shown that there was reasonable cause for such portion and that the taxpayer acted in good faith. *71 "Fraud is defined as an intentional wrongdoing designed to evade tax believed to be owing." DiLeo v. Commissioner, 96 T.C. 858, 874 (1991), affd. 959 F.2d 16 (2d Cir. 1992). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud will never be presumed. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). Respondent has the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b). Respondent cannot rely on petitioner's failure to prove error in respondent's determination to meet the burden of proving fraud. Petzoldt v. Commissioner, 92 T.C. 661, 700 (1989); Habersham-Bey v. Commissioner, 78 T.C. 304, 312 (1982); Otsuki v. Commissioner, 53 T.C. 96, 106 (1969); Pigman v. Commissioner, 31 T.C. 356, 370 (1958). To establish petitioner's *72 liability for the addition to tax for fraud, respondent must show the existence of an underpayment of taxes. DiLeo v. Commissioner, supra at 873; Parks v. Commissioner, 94 T.C. 654, 660-664 (1990); Hebrank v. Commissioner, 81 T.C. 640, 642 (1983). Respondent also has the burden of proving that petitioner had the requisite fraudulent intent. DiLeo v. Commissioner, supra at 873; Parks v. Commissioner, supra at 664-665; Hebrank v. Commissioner, supra at 642. Respondent's burden is met by a showing that petitioner intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of tax. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); Katz v. Commissioner, 90 T.C. 1130, 1143 (1988); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). Fraudulent intent may be proved, however, by circumstantial evidence because direct proof of *73 the taxpayer's intent is rarely available. DiLeo v. Commissioner, supra at 874-875; Parks v. Commissioner, supra at 664; Rowlee v. Commissioner, supra.The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Stephenson v. Commissioner, 79 T.C. 995, 1005-1006 (1982), affd. 748 F.2d 331 (6th Cir. 1984); Stone v. Commissioner, 56 T.C. 213, 223-224 (1971). As in the instant case, where petitioner is an estate, the fraudulent intent of the executor is treated as that of the estate. Estate of Pittard v. Commissioner, 69 T.C. 391 (1977); Estate of Edens v. Commissioner, T.C. Memo. 1981-557. In Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601, the Court of Appeals for the Ninth Circuit enunciated a nonexhaustive list of factors which demonstrate fraudulent intent. These "badges of fraud" include: (1) Understating *74 income; (2) providing implausible or inconsistent explanations of behavior; (3) concealing assets; and (4) failing to cooperate with the tax authorities. Recklitis v. Commissioner, 91 T.C. 874, 910 (1988); see Webb v. Commissioner, 394 F.2d 366 (5th Cir. 1968), affg. T.C. Memo. 1966-81. Respondent contends that the following acts, when viewed as a whole, establish Kenneth Fox's fraudulent intent: (1) Kenneth Fox's failure to disclose to Mr. Greenwald the existence of the unreported bearer bonds, the safe deposit box, decedent's handwritten note, and numerous bank accounts; (2) Kenneth Fox's statements to Mr. Greenwald that he failed to report estate assets on the return; (3) Kenneth Fox's implausible and inconsistent explanations as to why the unreported bonds were not reported; (4) Kenneth Fox's statement to Mr. Greenwald that decedent had not made any taxable gifts during her lifetime; (5) Kenneth Fox's failure to report on the estate tax return the loans made to Dean Fox; (6) Kenneth Fox's failure to cooperate with Mr. Morton during the audit by providing misleading information; (7) Kenneth *75 Fox's commingling of estate funds with his own; (8) Kenneth Fox's sudden disclosure of Dean Fox's loans and the adjusted taxable gifts upon learning that he might be criminally prosecuted; (9) Kenneth Fox's strong educational background [13] as well as Kenneth Fox's knowledge of tax law; (10) Kenneth Fox's conduct in the Surrogate Court; and (11) Kenneth Fox's retention of several attorneys and three accountants since decedent's death for matters dealing with decedent's estate as well as the fact that Kenneth Fox obtained four separate accountings. Petitioner does not seriously dispute that it underpaid its Federal estate taxes on decedent's estate. Petitioner merely contends that the underpayment is due to the mistake of its accountant, Mr. Greenwald. Petitioner also attempts to refute all of the inferences of fraud raised by respondent. Respondent's first *76 contention is that Kenneth Fox's failure to disclose the unreported bonds, the safe deposit box, the handwritten note, and various bank accounts to Mr. Greenwald is evidence of fraud. Petitioner contends that Kenneth Fox was under no obligation to make such disclosures because the bonds did not belong to decedent, but had been given as a gift to decedent's sons. Petitioner also contends that the money in the bank accounts did not belong to decedent. The record establishes that decedent never parted with dominion and control over the unreported bonds as they were held in her safe deposit box until her death. The record also establishes that the balances in the joint accounts were solely attributable to funds furnished by decedent. Consequently, we conclude that Kenneth Fox's failure to disclose to Mr. Greenwald the bonds and the bank accounts or the safe deposit box and the handwritten note which would lead to the discovery of the bonds is evidence of fraud. The next indicator on which respondent relies is Kenneth Fox's statement to Mr. Greenwald after the estate tax return had been filed that Kenneth Fox failed to report certain estate assets. Petitioner contends that Kenneth *77 Fox never made such a statement and that Mr. Greenwald is not to be believed. Petitioner's contention has no merit. During the trial, we found Mr. Greenwald to be a credible witness in contrast to Kenneth Fox's hostile and evasive demeanor. We find it incredible that Kenneth Fox found Mr. Greenwald to be untrustworthy in light of the fact that Kenneth Fox sought to retain Mr. Greenwald to handle the accounting for the estate and no reason is advanced by petitioner why Mr. Greenwald should not be believed. We conclude that Kenneth Fox's disclosure to Mr. Greenwald is evidence of fraud. Respondent next contends that Kenneth Fox has presented implausible and inconsistent explanations as to why he did not report the unreported bearer bonds. Petitioner merely contends that such allegations are "empty" and not supported by the record. We disagree. At trial, Kenneth Fox testified that the unreported bearer bonds are not includable in petitioner's estate because decedent gave the unreported bearer bonds to her sons years prior to her death. Kenneth Fox also testified that some of the money used to purchase the unreported bearer bonds belonged to decedent's sons. Petitioner has offered *78 two different and mutually exclusive explanations as to why the bonds were not included. As we stated above in our discussion of the unreported bearer bonds, Kenneth Fox's statements are self- serving and uncorroborated. Consequently, we conclude that Kenneth Fox's inconsistent explanations are evidence of fraud. As evidence of fraud, respondent next relies on Kenneth Fox's untruthful statements to Mr. Greenwald that decedent did not make any taxable gifts during her lifetime. Petitioner contends that none of the gifts made exceeded $ 10,000. The record reflects that Kenneth Fox was aware that any amount by which a gift exceeds $ 10,000 to any one individual during the calendar year is a taxable gift and that decedent made several gifts to Kenneth Fox that exceeded $ 10,000. Consequently, we conclude that Kenneth Fox's failure to disclose the taxable gifts he received from decedent is evidence of fraud. The next badge on which respondent relies is Kenneth Fox's failure to report the loans made to Dean Fox. Petitioner contends that Dean Fox told Kenneth Fox that the loans had been forgiven and that Kenneth Fox immediately divulged the loans once Mr. Milara told him that the *79 loans should have been included on the estate tax return. Kenneth Fox, however, did not offer any evidence to corroborate his testimony that the loans had been forgiven. To the contrary, Kenneth Fox's own accountant Mr. Milara did not find Kenneth Fox's version of the facts to be credible. Additionally, Dean Fox testified that the loans were not forgiven. Given the fact that decedent explicitly instructed Kenneth Fox to include the loans in the estate, we conclude that petitioner's failure to divulge the loans is evidence of fraud. Respondent next contends that Kenneth Fox provided misleading information to Mr. Morton during the audit. Petitioner contends that Kenneth Fox completely cooperated with Mr. Morton during the audit. The record reflects that Kenneth Fox did not disclose certain transfers made between various bank accounts. We conclude that Kenneth Fox's failure to disclose to Mr. Morton all of the bank account transfers is evidence of fraud. Respondent next contends that fraud is indicated by Kenneth Fox's commingling of estate funds with his own. Specifically, respondent refers to Kenneth Fox's possession of the unreported bearer bonds as well as the funds in *80 the joint accounts. Petitioner counters with the contention that the unreported bearer bonds and the money in the accounts are not estate assets. The record reflects that the bonds were owned by decedent at her death, and that the money in the joint accounts belonged to decedent. Consequently, petitioner's contention has no merit. Accordingly, we consider the commingling of personal funds with estate assets as an indication of fraud. Respondent next contends that Kenneth Fox's sudden disclosure of the loans to Dean Fox as well as gifts made by decedent upon learning that he might be criminally prosecuted establishes fraud. Petitioner contends that Kenneth Fox never found himself on the "verge" of criminal prosecution and that his conduct was not improper. Although we have found above that petitioner acted in a fraudulent manner in its failure to report the loan to Dean Fox and the gifts to Kenneth Fox, the record contains insufficient evidence to establish that Kenneth Fox's disclosure occurred as a result of his belief that he was about to be criminally prosecuted. As we are without sufficient evidence to conclude that the disclosure was a result of potential criminal prosecution, *81 we do not consider respondent's argument in deciding whether fraud exists in the instant case. Respondent next contends that Kenneth Fox's educational background as well as his knowledge of tax law is indicative of fraud. Petitioner contends that Kenneth Fox has no detailed knowledge of tax law. The record reflects that Kenneth Fox was significantly involved with the preparation of the tax returns. He provided Mr. Greenwald with meticulous schedules of the estate assets he wished to divulge, and he even provided Mr. Greenwald with a handwritten copy of petitioner's final Federal income tax return. The record also reflects that Kenneth Fox discussed taxes and finances with decedent in order to assist her. Consequently, we conclude that Kenneth Fox's failure to report assets in light of his background and knowledge of tax law is evidence of fraud. See Grosshandler v. Commissioner, 75 T.C. 1 (1980). Respondent further contends that Kenneth Fox's conduct in Surrogate Court establishes fraud. Petitioner contends that his conduct in Surrogate Court has not been found to be improper. The record indicates that Kenneth Fox's brothers have brought charges *82 against Kenneth Fox for the alleged mishandling of the estate. The record, however, does not reflect the outcome of the action. Consequently, we do not consider respondent's contention regarding Kenneth Fox's conduct in the Surrogate Court as an indication of fraud. Respondent finally contends that Kenneth Fox's retention of several attorneys and three accountants as well as his request for four accountings evinces fraud. Petitioner contends that Kenneth Fox had every right to hire and later discharge attorneys and accountants if he was dissatisfied with their services, and therefore such conduct does not evince fraud. Petitioner further contends that since there are no material inconsistencies among the accountings, no inferences of fraud can be drawn from them. Although Kenneth Fox's inability to maintain relationships with numerous professionals as well as his demand for several accountings may appear suspicious, the record in the instant case does not contain sufficient information about the various professionals hired and fired by Kenneth Fox or about the circumstances surrounding all of the accountings. Consequently, we do not consider respondent's argument regarding *83 Kenneth Fox's retention of numerous tax professionals and his demand for several accountings in our evaluation of whether to apply the fraud penalty. In sum, although we are unable to consider a few of the badges asserted by respondent, considering the numerous remaining badges established by respondent, we hold that respondent has proved by clear and convincing evidence that the underpayments are due to fraud. Petitioner contends that the fraud penalty does not apply because under section 6664(c) it had reasonable cause for all of the underpayments and it acted in good faith. Petitioner specifically contends that it is not liable for the fraud penalty because any underpayments were due to petitioner's reliance on Mr. Greenwald. A taxpayer's reliance upon his accountant to prepare an accurate return may indicate an absence of fraudulent intent. Marinzulich v. Commissioner, 31 T.C. 487, 490 (1958). As to the failure to report accrued interest on bonds that were reported on the estate tax return, Mr. Greenwald testified that it was his understanding that the market value at the time of the valuation of the bonds already "took into account accrued *84 interest". We believe that Mr. Greenwald thought that the interest had already been included and that petitioner relied on Mr. Greenwald's advice regarding accrued interest on the reported bonds. Consequently, we conclude that petitioner has met its burden of establishing by a preponderance of the evidence that the underpayment of accrued interest on the reported bonds was not due to fraud. Accordingly, we hold that the fraud penalty does not apply to that portion of the underpayment attributable to accrued interest on the reported bonds. A taxpayer, however, may not rely on a tax professional to avoid the fraud penalty if the taxpayer has not provided the tax professional with all of the information necessary to prepare a true and correct return. Estate of Temple v. Commissioner, 67 T.C. 143, 162 (1976). Kenneth Fox was extremely selective about the information he supplied to his accountant. Consequently, we hold that petitioner has not proved that it reasonably relied on Mr. Greenwald as to the rest of the underpayment. Accordingly, we hold that petitioner is liable for the fraud penalty on the underpayments due to the unreported bearer bonds, *85 the loans to Dean Fox, the joint accounts, the understatement of value of the reported bonds, [14] the administration expenses, and the increase in adjusted taxable gifts. [15]
Accuracy-Related Penalty
As a result of our holding that petitioner is not liable for the fraud penalty with respect to the accrued interest on the reported bonds, we must decide whether petitioner is liable for the accuracy-related *86 penalty under section 6662 on such amounts. Because the penalty was first asserted by respondent in the Answer, respondent has the burden of proof. Rule 142(a); Crouch v. Commissioner, T.C. Memo. 1990-309. Section 6662(b)(1) provides for an accuracy-related penalty equal to 20 percent of the underpayment where an underpayment of tax is attributable to a taxpayer's negligence or disregard of rules and regulations. Negligence is defined as the lack of due care or failure to do what an ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 937 (1985). Respondent contends that Kenneth Fox failed to exercise ordinary care in failing to report the accrued interest. Petitioner, however, contends that the failure to report the interest was based on the advice received from Mr. Greenwald. Reliance on a return preparer may relieve a taxpayer from the negligence penalty where the taxpayer's reliance is reasonable. Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991). *87 As we stated above, Mr. Greenwald presented credible testimony that he had thought the accrued interest had already been included in the date of death value of the bonds. Consequently, we hold that respondent has failed to show that petitioner's reliance on Mr. Greenwald was unreasonable. Accordingly, we hold that petitioner is not liable for the accuracy-related penalty with respect to the unreported accrued interest on the reported bonds. All other arguments of petitioner have been considered and found to be without merit. Based on the foregoing, Decision will be entered under Rule 155. APPENDIX The following adjustments were made by respondent in the notice of deficiency with respect to bonds that petitioner reported: (1) Petitioner reported that 25 units of Triborough Bridge & Tunnel Authority 9.10-percent N.Y. Genl. Purpose Ser. D bonds due January 1, 1997, face amount of $ 25,000 had a fair market value of $ 26,500 as of the date of decedent's death. Respondent determined that the fair market value as of the date of decedent's death was $ 27,000.35, and accordingly, increased the taxable estate by $ 500.35. Respondent also determined that petitioner failed to *88 report $ 612.99 in accrued interest on such bonds as of the date of decedent's death. (2) Petitioner reported that 50 units of Town of Brookhaven, New York, 8.875-percent bonds due June 1, 1997, face amount of $ 50,000 had a fair market value of $ 51,562.50 as of the date of decedent's death. Respondent determined that the fair market value as of the date of decedent's death was $ 55,167.90, and accordingly, increased the taxable estate by $ 3,605.40. Respondent also determined that petitioner failed to report $ 1,565.45 in accrued interest on such bonds as of the date of decedent's death. (3) Petitioner reported that 35 units of City of Troy, New York, 8.70-percent bonds due February 1, 1994, face amount of $ 35,000 had a fair market value of $ 35,642.25 as of the date of decedent's death. Respondent determined that the fair market value as of the date of decedent's death was $ 37,104.93, and accordingly, increased the taxable estate by $ 1,462.68. Respondent also determined that petitioner failed to report $ 566.71 in accrued interest on such bonds as of the date of decedent's death. (4) Petitioner reported that 25 units of New York State General Obligation 9.50-percent bonds *89 due December 1, 1995, face amount of $ 25,000, had a fair market value of $ 25,231.75 as of the date of decedent's death. Respondent determined that the fair market value as of the date of decedent's death was $ 26,495.75, and accordingly, increased the taxable estate by $ 1,264. Respondent also determined that petitioner failed to report $ 837.85 in accrued interest on such bonds as of the date of decedent's death. (5) Petitioner reported that 30 units of State of New York Dormitory Authority 10.375-percent Series A bonds due July 1, 2012, face amount of $ 30,000, had a fair market value of $ 30,797.10 as of the date decedent's date. Respondent determined that the fair market value as of the date of decedent's death was $ 32,226.84, and accordingly, increased the taxable estate by $ 1,429.74. Respondent also determined that petitioner failed to report $ 838.65 in accrued interest on such bonds as of the date of decedent's death. The following adjustments were made by respondent in the notice of deficiency with respect to bonds that petitioner did not report on the estate tax return: (1) Respondent determined that petitioner failed to report that decedent owned 20 units of *90 Nassau County, New York, 6.60- percent bonds due May 1, 2003, face amount of $ 20,000. Respondent determined that the fair market value of such bonds was $ 18,193.28 as of the date of decedent's death, and accordingly increased the taxable estate by $ 18,193.28. Respondent further increased the taxable estate by $ 575.67, the amount of accrued interest as of the date of decedent's death. (2) Respondent determined that petitioner failed to report that decedent owned 20 units of New York Transportation Capital Facilities 6.40-percent bonds due February 15, 2004, face amount of $ 20,000. Respondent determined that the fair market value of such bonds was $ 18,306.50 as of the date of decedent's death, and accordingly, increased the taxable estate by $ 18,306.50. Respondent further increased the taxable estate by $ 188.44, the amount of accrued interest as of the date of decedent's death. (3) Respondent determined that petitioner failed to report that decedent owned 15 units of Nassau County, New York, Serial General Improvement 5.50-percent bonds due April 1, 2002, face amount of $ 15,000. Respondent determined that the fair market value of such bonds was $ 12,370.06 as of the date *91 of decedent's death, and accordingly, increased the taxable estate by $ 12,370.06. Respondent further increased the taxable estate by $ 16.04, the amount of accrued interest as of the date of decedent's death. (4) Respondent determined that petitioner failed to report that decedent owned 90 units of Nassau County, New York, 8.10-percent bonds due July 15, 2002, face amount of $ 90,000. Respondent determined that the fair market value of such bonds was $ 90,000 as of the date of decedent's death, and accordingly, increased the taxable estate by $ 90,000. Respondent further increased the taxable estate by $ 1,680.75, the amount of accrued interest as of the date of decedent's death. (5) Respondent determined that petitioner failed to report that decedent owned 50 units of New York State Environ. 8.20- percent bonds due March 15, 1998, face amount of $ 50,000. Respondent determined that the fair market value of such bonds was $ 52,761.60 as of the date of decedent's death, and accordingly increased the taxable estate by $ 52,761.60. Respondent further increased the taxable estate by $ 261.94, the amount of accrued interest as of the date of decedent's death. (6) Respondent determined *92 that petitioner failed to report that decedent owned 25 units of Niagara Falls, New York, 10.00- percent bonds due March 15, 1994, face amount of $ 25,000. Respondent determined that the fair market value of such bonds was $ 27,813.05 as of the date of decedent's death, and accordingly increased the taxable estate by $ 27,813.05. Respondent further increased the taxable estate by $ 159.72, the amount of accrued interest as of the date of decedent's death. (7) Respondent determined that petitioner failed to report that decedent owned 25 units of Orange County, New York, 11.50- percent bonds due May 15, 2000, face amount of $ 25,000. Respondent determined that the fair market value of such bonds was $ 29,117 as of the date of decedent's death, and accordingly increased the taxable estate by $ 29,117. Respondent further increased the taxable estate by $ 1,142.01, the amount of accrued interest as of the date of decedent's death. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect as of the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. In the notice of deficiency, respondent determined that petitioner did not report on petitioner's Federal estate tax return a total of $ 8,446.22 in interest accrued on both reported and unreported municipal bearer bonds which was includable in decedent's estate. Petitioner concedes that accrued interest in the amount of $ 4,421.65 with respect to the reported bearer bonds should have been included in the gross estate. Accordingly, only the remaining $ 4,024.57 in interest with respect to the unreported bearer bonds is still in issue.↩
3. In the notice of deficiency, respondent determined that the amount of decedent's total adjusted taxable gifts is $ 89,845. At trial, however, respondent asserted that the total amount of adjusted taxable gifts is $ 89,200, and not $ 89,845.↩
4. Mr. Milara's accounting was one of several accountings which were ordered during the course of the Surrogate Court proceedings. Edward Donnelly, an accountant, had also been hired by Kenneth Fox to do an accounting, which was submitted to the Surrogate Court on or around June 12, 1991.↩
5. Dean Fox's initials "DF" and the date "4/17/86" appear at the end of this sentence.↩
6. Kenneth Fox did not disclose the existence of the custodial accounts to Mr. Morton. Dean Fox knew that custodial accounts had been set up for his children, Lila Fox and Cory Fox, but he thought his mother was the custodian. Dean Fox learned that Kenneth Fox was the custodian as a result of the proceedings in the Surrogate Court.↩
7. Apparently, Kenneth Fox informed Mr. Milara that he did not include the loans to Dean Fox in the estate because Dean Fox told him that the loans had been forgiven. Mr. Milara, however, included the loans in the estate in light of decedent's note and the fact that Kenneth Fox had no documentation corroborating that the loans had been forgiven.↩
8. Based on the record as developed at trial, respondent has recalculated the adjusted taxable gifts to total $ 89,200. The $ 89,200 in gifts to Kenneth Fox is calculated by respondent as follows: ↩
Taxable Year 1988
Check no. 114 drawn on decedent's checking account
$  13,200 Check no. 101 drawn on decedent's Dreyfus account
10,000 Check nos. 102, 103, 104, 105, drawn on decedent's
40,000 Dreyfus account
Total gifts for 1988
63,200 Annual exclusion
(10,000)
53,200 Taxable Year 1989
Passumpsic transfer to Lila Fox
10,000 Passumpsic transfer to Joshua Waggy
10,000 Passumpsic transfer to Benjamin Waggy
4,145 Check no. 342 drawn on decedent's checking account
5,855 Check no. 340 drawn on decedent's checking account
16,000 Total gifts for 1989
46,000 Annual exclusion
(10,000)
36,000 Total adjusted taxable gifts
53,200 36,000 89,200 9. Although petitioner argues that Jules Fox and decedent gave the bonds to all three sons, Kenneth Fox testified that the bonds were partially purchased using funds belonging to the three sons. There is nothing in the record to support Kenneth Fox's testimony on this point.↩
10. Petitioner presumably did not report the interest because petitioner did not report the underlying bonds which gave rise to the interest.↩
11. The executor may elect the alternate valuation method under sec. 2032. Sec. 20.2031-1(b), Estate Tax Regs. Kenneth Fox did not elect to use the alternate method in the instant case.↩
12. Sec. 6664(a) defines an underpayment as the amount by which any tax imposed by the Internal Revenue Code exceeds the excess of the sum of the amount shown as tax by the taxpayer on his return plus the amounts not so shown previously assessed over the amount of rebates made.↩
13. Kenneth Fox testified that he received a bachelor's degree in engineering from Cornell University and completed several graduate level business courses.↩
14. Petitioner does not assert that Kenneth Fox relied on Mr. Greenwald in valuing the reported bonds. Petitioner merely argues that Kenneth Fox acted in good faith. As we have stated above, we need not accept Kenneth Fox's self-serving statements at face value.↩
15. At trial, petitioner objected to the admissibility of several documents based on various grounds including attorney- client privilege, hearsay, relevance, and prejudice. Because we hold for respondent on the pertinent issues without considering such evidence, we hold that the question of whether such evidence should be admitted is moot.↩